UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:21-cv-00636-FDW-DSC

| | |
|---|---|
| GERALD DAMONE HOPPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| WILLIAM SALAZAR, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Defendant's Motion to Dismiss, (Doc. No. 15). Plaintiff, who appears pro se, filed a response, (Doc. No. 16), Defendant filed a reply, (Doc. No. 17), and without seeking leave of Court, Plaintiff submitted a surreply brief, (Doc. No. 18). Notwithstanding this violation of Local Civil Rule 7.1(e), the Court in this instance will grant leave for Plaintiff to file a surreply brief and consider the previously filed document, (Doc. No. 18), accordingly. For the reasons that follow, the Court GRANTS the motion to dismiss.

## BACKGROUND

Plaintiff Gerald Damone Hopper filed this action against Defendant William Salazar, a police officer with the Charlotte-Mecklenburg Police Department ("CMPD"), alleging Defendant wrongfully seized Plaintiff's cell phone in violation of Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. (Doc. No. 9-1). According to the Amended Complaint, on the afternoon of March 14, 2021, a man named Jimmy Love drove into Plaintiff's driveway; shouted "I'm tired of people talking about my baby sister;" and shot Plaintiff in his back, chest, and leg area. (Doc. No. 9-1, p. 2). Following the incident, Defendant seized Plaintiff's cell phone and placed it in the CMPD Property and Evidence Division. On March 26,

1

2021, Defendant obtained a search warrant to search Plaintiff's cell phone. Plaintiff's Amended Complaint indicates Love had informed law enforcement that he shot Plaintiff because Plaintiff had called Love's nine-year old daughter. (Id. at p. 6).

On November 1, 2021, Defendant, along with two Assistant District Attorneys, interviewed Plaintiff, where he appeared without counsel. Plaintiff contends he was never advised of his right to an attorney. (Id. at p. 3). As part of the interview, "it was made clear that Plaintiff [sic] cell phone would not be released until Plaintiff reveals the passcode to open his cell phone." (Id. at p. 2). Plaintiff provided his passcode to CMPD's forensic phone technician. On November 2, 2021, an Assistant District Attorney advised Plaintiff he could pick up his cell phone from CMPD, and on November 4, 2021, Plaintiff received a letter from the CMPD Property and Evidence Division advising Plaintiff of the same.

Plaintiff also alleges that he was not charged with any crime related to Love's daughter and contends he never contacted her. Plaintiff contends Defendant and the Assistant District Attorneys also knew this when they interviewed him. Instead, Plaintiff contends Defendant and Plaintiff have a history whereby Defendant had visited Plaintiff's residence several times because of "Calls to Services."[1] (Id. at p. 3). Plaintiff contends Defendant "was on a fishing expedition hoping to find any type of criminal activity of Plaintiff's cell phone." (Id.).

Plaintiff initially filed suit against Defendant and three Assistant District Attorneys, (Doc. No. 1). As part of this Court's initial review pursuant to 28 U.S.C. § 1915(e)(2), the Court dismissed the claims against the Assistant District Attorneys and directed to file an Amended Complaint. (Doc. No. 3). On initial review, the Court concluded Plaintiff's claims against Defendant William Salazar were not clearly frivolous. (Doc. No. 10, p. 3). Relying on 42 U.S.C.

---

[1] Plaintiff contends he made these "Call to Services" because he is a certified Peer Support Specialist, and he would call Police or Medic if someone is violent or using drugs. (Doc. No. 9-1, p. 4).

2

§ 1983, Plaintiff's Amended Complaint alleges Defendant William Salazar in his individual capacity violated Plaintiff's: 1) Fourth Amendment right to be free from unreasonable search and seizure; 2) Fifth Amendment right against self- incrimination; and 3) Fourteenth Amendment right to due process by failing to follow the lawful process to obtain a search warrant before seizing and searching Plaintiff's cell phone. As a result of the alleged violations, Plaintiff requests damages in the amount of one million dollars in compensatory damages and one million dollars in punitive damages. Defendant moves to dismiss the Amended Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests only "the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). The district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 94 (2007). But "legal conclusions" and "conclusory statements" will not suffice. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." Id. A complaint must simply contain factual allegations that "raise a right to relief above the speculative level, thereby nudging [the] claims across the line from conceivable to plausible." Hately v. Watts, 917 F.3d 770, 782 (4th Cir. 2019) (quoting Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011)).

"Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal

3

nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996). One such defense is qualified immunity. Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011) (citing Jenkins v. Medford, 119 F.3d 1156, 1159 (4th Cir. 1997) (en banc)).

A pro se complaint must be liberally construed, even if "inartfully pleaded." Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Bazemore v. Best Buy, 957 F.3d 195, 200 (4th Cir. 2020). Pro se complaints are held to a less stringent standard than those drafted by attorneys. See id. 4; Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). This requirement of liberal construction does not mean, however, that the court should ignore a clear failure to plead facts which set forth a cognizable claim. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990).

## ANALYSIS

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). A § 1983 claim requires proof of the following three elements: "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." Jenkins v. Medford, 119 F.3d 1156, 1159–60 (4th Cir. 1997). Government officials sued in their official capacities for monetary damages are not "persons" for purposes of § 1983. Hafer v. Melo, 502 U.S. 21, 26–27 (1991). Government officials sued in their individual capacities are "persons" within the meaning of the statute, although they may be entitled to qualified immunity. Id. at 26. Here, Plaintiff's claims made pursuant to Section 1983 assert Defendant individually violated the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States. The Court addresses each in turn.

4

A.     Fourth Amendment

Plaintiff contends Defendant's search and seizure of his cell phone violates Plaintiff's Fourth Amendment rights.[2]  Defendant moves to dismiss this claim, arguing Plaintiff fails to sufficiently allege a Fourth Amendment violation.  The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. amend. IV.  "To establish a viable Fourth Amendment claim, a plaintiff must show not only that there was a search and seizure as contemplated by the Fourth Amendment, but also that said search and seizure was unreasonable and conducted without consent."  Rakas v. Illinois, 439 U.S. 128, 143 (1978).  Property is seized whenever "there is some meaningful interference with an individual's possessory interests in that property."  United States v. Jacobsen, 466 U.S. 109, 113 (1984).

Here, Defendant initially seized Plaintiff's cell phone without a warrant; however, Defendant subsequently obtained a search warrant within two weeks of the initial seizure and as part of his investigation into the shooting.  As a general rule, a seizure of personal property is "per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized."  United States v. Place, 462 U.S. 696, 701 (1983).  "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or in 'objective good faith.'"  Messerschmidt v. Millender, 565 U.S. 535, 546, 132 S.Ct. 1235, 182

---

[2] Here, Plaintiff does not make *any* allegation that Defendant *searched* Plaintiff's phone.  Riley v. California, 573 U.S. 373, 401 (2014) (holding that "a warrant is generally required before [a search of a cell phone], even when a cell phone is seized incident to arrest.").  Indeed, the allegations suggest otherwise: to wit, that Defendant could not search Plaintiff's phone until Plaintiff provided the passcode during the November 1, 2021, interview.  By this point, however, Defendant had a search warrant.

L.Ed.2d 47 (2012) (quoting United States v. Leon, 468 U.S. 897, 922–23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)).

"A seizure that is 'lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests.'" United States v. Pratt, 915 F.3d 266, 271 (4th Cir. 2019) (quoting United States v. Jacobsen, 466 U.S. 109, 124, (1984)). In determining whether the duration of the seizure was lawful, the court must "balance the government's interest in the seizure against the individual's possessory interest in the object seized." Pratt, 915 F.3d at 271 (citations omitted). "A strong government interest can justify an extended seizure." Id. Ultimately, the court "will uphold a temporary warrantless seizure if it was supported by probable cause and was designed to prevent the loss of evidence while the police diligently obtained a warrant in a reasonable period of time." United States v. Burton, 756 F. App'x 295, 299 (4th Cir. 2018) (cleaned up). The reasonableness of the seizure may vary due to "the nature and complexity of the investigation . . . the diversion of law enforcement to another case . . . [and] the quality of the warrant application and the amount of time . . . such a warrant would take to prepare." United States v. Laist, 702 F.3d 608, 614 (11th Cir. 2012).

Here, Plaintiff's claim hinges on Defendant's seizure of the phone following the shooting on March 14, 202l; the failure to obtain a warrant until March 26, 2021; and the continued seizure of the phone until his interview on November 1, 2021. Notably, the Amended Complaint does not allege precisely when Defendant initially seized Plaintiff's cell phone, although it is clear it was after Plaintiff had been shot and prior to obtaining a search warrant. The allegations also make clear that Love had fled the scene with the weapon by the time Defendant responded to the scene where Plaintiff had been shot. Exigent circumstances surrounding Plaintiff's shooting and Love fleeing the scene, as well as Plaintiff's immediate transport to the hospital and hospitalization,

6

support Defendant's initial seizure of the cell phone on March 14, 2021, based on the reasonable belief that it might contain evidence related to the crime against Plaintiff.

It is undisputed that Defendant obtained a Search Warrant for Plaintiff's phone on March 26, 2021,[3] and that Defendant obtained the warrant as part of his investigation into Love shooting Plaintiff on March 14, 2021. Defendant indicated in the Application for Search Warrant that Plaintiff's phone constitutes evidence of and the identity of a person participating in the crime of assault with a deadly weapon with the intent to kill or inflict serious injury. (Doc. No. 1-1, p. 2). As part of the investigation into this crime, Love confessed to shooting Plaintiff and indicated he shot Plaintiff because Plaintiff called Love's phone and talked to Love's nine-year-old daughter, who was in possession of Love's phone at the time. In asserting a basis for probable cause to search and seize Plaintiff's phone, Defendant swore that "there is probable cause to believe that suspect Jimmy Love [redacted] also used his unknown cell phone to communitcate [sic] to Gerald Hopper [redacted] black Apple Iphone with a black case." (Id. at p. 4). While Plaintiff asserts that Love fabricated the statements about a call to his daughter, Plaintiff's Amended Complaint does not contend *Defendant* made any false statement in his application for the Search Warrant or that the warrant is defective on its face. Plaintiff also fails to make any allegation that Defendant fabricated, misrepresented, or omitted material information that was necessary to the probable cause finding by the magistrate. See Massey v. Ojaniit, 759 F.3d 343, 357 (4th Cir. 2014) ("False statements alone do not, however, run afoul of the Fourth Amendment. To contravene the

---

[3] In his Amended Complaint, Plaintiff quotes the Search Warrant and references it as "Exhibit A." (Doc. No. 9-1, p. 2). The Search Warrant, however, was not attached to the Amended Complaint, although it appears as though Plaintiff attempted to incorporate it by reference as the Exhibit A attached to his original Complaint. (See Doc. No. 1-1). In his response to the instant motion, Plaintiff also attached the Search Warrant. The Court considers that Exhibit A to the original Complaint, (Doc. No. 1-1), as if it were also attached to the Amended Complaint, which is operative here.

Constitution, the false statements or omissions must be material, that is, necessary to the finding of probable cause." (citations and quotations omitted)).

Instead, Plaintiff merely alleges that Defendant "was on a fishing expedition hoping to find any type of criminal activity on Plaintiff's cell phone." (Doc. No. 9-1, p. 3). Such allegation, however, is speculative at best, particularly where the allegations indicate Defendant was investigating Love—*not* Plaintiff. Within two weeks of the incident and following an investigation that appears to include conversations with both Love and Plaintiff, Defendant obtained a search warrant that expressly identified Love—not Plaintiff—as the "suspect." These allegations suggest probable cause for the seizure of Plaintiff's phone. Nothing in Plaintiff's Amended Complaint suggests there was no substantial basis for a finding of probable cause and issuance of the search warrant, which justifies the ongoing seizure of the cell phone as part of Defendant's investigation into the crime against Plaintiff.[4]

Plaintiff's Amended Complaint fails to sufficiently allege a lack of probable cause for Defendant to have seized the cell phone as part of his investigation into Love's shooting of Plaintiff, and Plaintiff fails to plausibly allege such seizure was unreasonable. Plaintiff's assertion that Defendant seized Plaintiff's phone as part of a "fishing expedition" to charge Plaintiff with a

---

[4] Plaintiff's Amended Complaint makes no mention of what happened between the time the search warrant issued on March 26, 2021, and his interview on November 1, 2021. Plaintiff does not allege he made any effort to seek the return of his phone during this time frame, does not allege Defendant or any other person refused to return the phone at any point, and does not allege any harm to him allegedly caused by the ongoing seizure of his phone. Finally, he makes no allegations related to the duration of the seizure, simply that it should not have occurred. To some extent, the Court finds this absence of allegations to suggest Plaintiff may have abandoned his cell phone; indeed the allegations do not ever mention whether Plaintiff *ever* took back possession of his phone following the seizure, even after he was informed he could retrieve it from CMPD. See United States v. Stevenson, 396 F.3d 538, 546 (4th Cir. 2005) ("When a person voluntarily abandons his privacy interest in property, his subjective expectation of privacy becomes unreasonable . . . ."); but see United States v. Harris, No. 3:15CR170, 2016 WL 1441382, at *8 (E.D. Va. Apr. 11, 2016), aff'd, 688 F. App'x 223 (4th Cir. 2017) ("'An abandonment may be involuntary, and thus invalid, where it results directly from police misconduct, such as an illegal search or seizure, deceit, or, perhaps, a pattern of harassment.'" (quoting United States v. Lewis, 921 F.2d 1294, 1302 (D.C. Cir. 1990)). Resolution of this issue, however, is unnecessary for ruling on the instant motion.

crime is speculative and conjectural, and the Amended Complaint lacks sufficient allegations to plausibly support a violation of Plaintiff's Fourth Amendment rights.

Finally, in order to recover compensatory damages, Plaintiff must allege that any of the alleged unconstitutional by Defendant proximately caused his injuries. See, e.g., Farrar v. Hobby, 506 U.S. 103, 112 (1992) ("no compensatory damages may be awarded in a § 1983 suit absent proof of actual injury"). Absent an actual injury, "[a] plaintiff's failure to prove compensatory damages results in nominal damages, typically one dollar." Park v. Shiflett, 250 F.3d 843, 854 (4th Cir. 2001). Nominal damages are appropriate where the evidence demonstrates that a defendant public official's actions, "while technically violating [a plaintiff's] constitutional rights, did not proximately cause his injuries." Carter v. Burch, 34 F.3d 257, 264 (4th Cir. 1994).

Although the Amended Complaint requests compensatory damages in the amount of $1,000,000 for Defendant's violations, the Amended Complaint fails to allege *any* compensable injury entitling him to damages beyond nominal damages. See Heck v. Humphrey, 512 U.S. 477, 487 n.7 (1994) ("In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury."); Uzuegbunam v. Preczewski, ––– U.S. ––––, 141 S. Ct. 792, 801-02, 209 L.Ed.2d 94 (2021) (explaining that "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right" where "nominal damages were available at common law in analogous circumstances"); see also White v. City of Greensboro, No. 1:18-CV-00969, 2022 WL 2237299, at *11 (M.D.N.C. June 22, 2022) (collecting district court cases outside the Fourth Circuit recognizing that a plaintiff can recover nominal damages for Fourth Amendment constitutional violation even where the plaintiff fails to prove actual damages).

For the reasons above, Plaintiff has failed to state claim for violation of the Fourth Amendment and failed to sufficiently allege any recoverable compensatory damages under Section 1983.

2. Qualified Immunity

Even if Plaintiff had plausibly stated a claim, Defendant enjoys qualified immunity as to this claim. Qualified immunity shields police officers in their individual capacities from liability unless their conduct constitutes a violation of clearly established constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818–19 (1982); see also Mullenix v. Luna, 577 U.S. 7, 11 (2015) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "To overcome this shield, a plaintiff must demonstrate that: (1) the defendant violated the plaintiff's constitutional rights, and (2) the right in question was clearly established at the time of the alleged violation." Adams v. Ferguson, 884 F.3d 219, 226 (4th Cir. 2018); see also Crouse v. Town of Moncks Corner, 848 F.3d 576, 583 (4th Cir. 2017) (citing Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). An official is entitled to qualified immunity if either prong is not satisfied. Pearson, 555 U.S. at 244–25. Under the second prong, a government official is entitled to qualified immunity if the right at issue was not "clearly established at the time of the challenged conduct." al-Kidd, 563 U.S. at 735. The Supreme Court has explained that a constitutional right is clearly established where "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Reichle v. Howards, 566 U.S. 658, 664 (2012) (quoting al-Kidd, 563 U.S. at 741). Thus, "if there is a legitimate question as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity." Martin v. St. Mary's Dep't of Soc. Servs.,

346 F.3d 502, 505 (4th Cir. 2003) (internal quotation marks omitted); see also Pearson, 555 U.S. at 244 ("The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987). If the defendant's actions "were not clearly unlawful when performed," he is entitled to qualified immunity. Francis v. Giacomelli, 588 F.3d 186, 196 (4th Cir. 2009).

Here, the Amended Complaint makes clear that Defendant is entitled to qualified immunity for Plaintiff's claims related to the search and seizure of his cell phone. The allegations indicate that at some point on or about the shooting on March 14, 2021, and as part of his investigation of the shooting, Defendant seized Plaintiff's cell phone. Defendant subsequently obtained a search warrant on March 26, 2021, and Plaintiff's allegations do not sufficiently allege any basis for finding the search warrant invalid. The Amended Complaint also fails to make any allegation that Defendant played any role in ongoing seizure of the cell phone or that such ongoing seizure was unreasonable until it was returned in November 2021. Liberally construing Plaintiff's Amended Complaint, there is no basis for finding that Defendant's initial seizure of the cell phone on March 14, application for a search warrant on March 26, and subsequent involvement in the return of the cell phone in November violated a clearly established right. Accordingly, Defendant is entitled to qualified immunity.

B. Fourteenth Amendment

Plaintiff also contends Defendant violated his due process rights under the Fourteenth Amendment by searching and seizing his cell phone. "The Fourteenth Amendment's Due Process

11

Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569–70 (1972).

Plaintiff's Amended Complaint fails to plead sufficient facts to state a claim for violation of his Fourteenth Amendment due process rights. The Fourteenth Amendment Due Process Clause is not the proper lens through which to evaluate the validity of the search and seizure of Plaintiff's cell phone. "Compared to the 'more generalized notion' of due process, the Fourth Amendment 'provides an explicit textual source of constitutional protection against [unreasonable seizures and arrests].'" Safar v. Tingle, 859 F.3d 241, 245 (4th Cir. 2017) (alterations in original) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989))); see also Brooks, 85 F.3d at 183 ("The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and the seizure of an individual effected without probable cause is unreasonable."). If a constitutional claim is covered by a specific constitutional provision, such as the Fourth Amendment, "the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n.7 (1997).

Applying these principles, the Court concludes Plaintiff's claim for unreasonable search and seizure of his phone falls under the Fourth Amendment, rather than the Fourteenth Amendment's Due Process Clause. As noted above, the Fourth Amendment specifically prohibits unreasonable seizures. Because the Fourth Amendment provides an explicit source of protection for the right that Defendant allegedly violated, it governs the analysis of Plaintiff's claim under § 1983. Accordingly, Plaintiff's claim under the Fourteenth Amendment is DISMISSED.

C.   Fifth Amendment

Plaintiff contends Defendant violated his Fifth Amendment right to remain silent and right to counsel by conducting an interview at the District Attorney's office.  Defendant seeks dismissal on the basis that Plaintiff fails to plead a plausible claim.  The Fifth Amendment privilege against self-incrimination provides. "No person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const., amend. V.  In Miranda v. Arizona, the Supreme Court established "procedural safeguards effective to secure the privilege against self-incrimination," including mandating that a person is advised of their Fifth Amendment rights when subjected to custodial interrogations. 384 U.S. 436, 444 (1966); United States v. Azua-Rinconada, 914 F.3d 319, 325 (4th Cir. 2019). "This requirement does not apply to all questioning, only to interrogations that are 'custodial.'" United States v. Arce, 49 F.4th 382, 389 (4th Cir. 2022) (quoting Miranda, 384 U.S. at 444).  The test for determining whether an individual is "in custody" for Miranda purposes is whether, under the totality of the circumstances, the "suspect's freedom of action is curtailed to a degree associated with formal arrest."  Berkemer v. McCarty, 468 U.S. 420, 440 (1984) (internal quotations omitted); see also United States v. Parker, 262 F.3d 415, 419 (4th Cir. 2001). The privilege against self-incrimination "protects a person only against being incriminated by his own compelled testimonial communications."  Doe v. United States, 487 U.S. 201, 207 (1988) (citations omitted) (internal quotation marks omitted).  In Chavez v. Martinez, 538 U.S. 760 (2003), a plurality of the Supreme Court held, "Statements compelled by police interrogations of course may not be used against a defendant at trial, but it is not until their use in a criminal case that a violation of the Self-incrimination Clause occurs." Id. at 767 (internal citations omitted).

13

Here, Plaintiff's Amended Complaint fails to sufficiently allege he was "in custody" at the time of the interview,[5] fails to identify any self-incriminating testimony given during the interview, and—most glaringly—"does not allege any trial action that violated his Fifth Amendment rights; thus, ipso facto, his claim fails on the [Chavez ] plurality's reasoning." Burrell v. Virginia, 395 F.3d 508, 514 (4th Cir. 2005) (dismissing plaintiff's § 1983 claim where the complaint failed to indicate plaintiff's statements were used in a court proceeding). Plaintiff's failure to sufficiently allege he was "in custody" is also fatal to his Fifth Amendment right to counsel claim. Accordingly, this claim is DISMISSED.

D.  Other Claims

Because the Court finds that dismissal of Plaintiff's claims under Federal Law is appropriate, the Court declines to exercise supplemental jurisdiction over Plaintiff's claims under state law, including the claim pursuant to N.C. Gen. Stat. § 15A-241 et seq. A district court "may decline to exercise supplemental jurisdiction over a pendent state law claim if ... the district court has dismissed all claims over which it has original jurisdiction. . . ." 28 U.S.C. § 1367(c)(3). "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). Accordingly, Plaintiff's state law claims are dismissed without prejudice.

It also follows that Plaintiff's pursuit of punitive damages should also be dismissed without prejudice, as no viable cause of action to which punitive damages could attach remains in this case.

**CONCLUSION**

---

[5] Plaintiff alleges that his "*cell phone* would not be released" until Plaintiff revealed his passcode; however, nothing in Plaintiff's Amended Complaint suggests Plaintiff was not free to leave the interview at any time. (Doc. No. 9-1, p. 2 (emphasis added)).

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss, (Doc. No. 15), is GRANTED, and this case is DISMISSED. Because Defendant has had multiple opportunities to amend his claims, the Court finds that dismissal WITH PREJUDICE is appropriate here. The Clerk of Court is respectfully directed to enter judgment accordingly.

IT IS SO ORDERED.

Signed: December 12, 2022

Frank D. Whitney
United States District Judge